Colt, Circuit Judge.
This suit and the three following[1] relate to patents covering devices in a municipal signal system. By this apparatus signals are conveyed by electricity to a central station from boxes located at convenient places on the streets. These signals or messages range themselves into two classes,—ordinary or patrol signals, which are sent by policemen on their beats, and emergency or want signals, such as fire-alarm, police, and ambulance calls. Several things are important in the operation of a complete police signal system. Not only must the message be received at the central station, but the time of its reception should be at the same moment recorded. Again,,the patrol signals sent in are very numerous, and do not require immediate attention, while the emergency signals are comparatively rare, but call for instant action, and therefore it is desirable that these should be distinguished from ordinary calls by the ringing of an alarm, in order to at once arrest the attention of the attendant at the central office. Further, it is important that the signal boxes should operate with speed and certainty, and should be so constructed as to be inaccessible to mischievous persons who might send in false alarms.
The principal parties to this suit are rivals in this line of business. In 1888 the city of Boston, being desirous of adopting an improved system of police signals, advertised for bids, and the complainant and defendant companies were competitors for this contract. The apparatus required by the city embraced the special features already mentioned, *461 and the defendant company proposed in their letters and specifications sent to the board of police to furnish such a system. They also constructed a working apparatus, which was on exhibition at their office in Boston. This was seen by Mr. Martin, a person of large experience in electrical devices of this class, and he describes the apparatus in detail. One of the board of police also visited the office, and he testifies as to the operation of the system. It is necessary to state these facts to meet the position taken by the defendants respecting the first three eases under consideration, namely, that complainants have failed in their proof of a technical infringement. In view of the evidence, however, and in the absence of any evidence contradictory thereto on the part of the defendants, 1 must hold the proof on this point to be sufficient, and that this defense should not prevail.
The present suit has reference to letters patent No. 178,750, dated June 18,1876, granted to Henry Ennis, for improvements in telegraphic fire alarms. The patent was duly assigned to James P. Oyster, one of the complainants. The other complainant, the Municipal Signal Company, has an exclusive license under the patent. The invention is for a receiving instrument which simultaneously registers a message, records the time of its reception, and sounds an alarm. It consists of a hammer arm for operating a bell, a pencil for recording a message on a traveling strip of paper, and a pencil for recording the time of day upon the face of a rotating clock dial, all of these parts being connected to the armature of an electro-magnet, so as to be simultaneously actuated. In the operation of the device, when the electric current passes through the magnet, the armature is attracted thereto, and, by reason of connecting arms and pivots, throws upward a pencil, marking the clock dial, and also a perforating pencil, impressing or printing the slip of paper, while, at the same time, the bell-hammer handle is thrown forward, and sounds an alarm.. In this way, every time the circuit is closed by the transmitting instrument, an alarm is struck, a mark is made on the dial to indicate the time, and a mark is made on the traveling ribbon corresponding to one of the characters of the “Morse” or any other known telegraphic alphabet.
The patentee says:
“The various features of my device maybe modified, and their arrangement changed, without departing from the spirit of my invention. ”
The first claim is the only one in controversy, and it is as follows:
“A telegraphic receiving instrument adapted to register a message and record the time of its reception, substantially as and for the purpose set forth.”
It is admitted that the elements, considered separately, which compose the Ennis machine were old at the time of the Ennis invention; in other words, a contrivance actuated by electricity for marking the time of day on a slip of paper by means of a dial revolved like clock work, a register for recording messages sent by electricity, and a contrivance for sounding an alarm by electricity, were well known in the art at this time. The novelty, therefore, of the Ennis invention must *462 consist in the combination of two or more of these elements hy means of which a new and useful result is produced. The first claim makes no reference to the bell-alarm apparatus, so that our present inquiry is limited to the combination of a message receiver and a time recorder in a telegraphic receiving instrument. While it is true that these contrivances were old, it is maintained hy the complainants that they were never before so combined as to coact together and produce simultaneously the results Ennis describes.
The first ground of defense is that this invention is a mere aggregation, and consequently not patentable. But it is not true that the Ennis invention is a mere aggregation of old elements. The Ennis machine represents not only a new organization, but it produces a new result. An aggregation is where two things are use independently, and operate independently, and there is no new result; but the very essence of the Ennis invention lies in the co-operation of certain things which it is contended had never before been made to co-operate together.
This brings us to the consideration of the prior art, which is invoked to show that there was nothing patentable in the Ennis invention, or, if patentable, to limit it to the precise devices set forth in his patent. To sustain this defense, reliance is placed largely upon the old watchman’s clocks which make a mark on the time strip when the watchman pushes a button at any particular place. I do think that a device which only sends a dot indicating that a button has been pressed can be considered the message sending or receiving apparatus of Ennis. These clocks are not organized for the purpose and are not designed to transmit messages. The most that can he said is that Ennis, in organizing his apparatus as a whole, made use of that part of the clock mechanism which relates to the time when a certain thing is done. The Hamblet patent of July 1, 1862, the Sheppard patent of April 9, 1872, and the Gilliland patent of October 18,1874, relate to watchman’s clocks, and they do not either anticipate or limit the real invention of Ennis; and the same may be said of the British patent to Groubman of April 10,1874, which was an apparatus for signaling trains on railways.
Much reliance is placed by the defendants upon the British White-house & Phillips patent, dated October 12, 1872, for a recording apparatus specially applicable to public vehicles. The patentee says:
“This invention is adapted to bodies in motion by making a written record of the time, speed, and distance run by such; '* * * also by registering the time and place of people or passengers entering or leaving public or private conveyances or buildings; also the relative numbers of such people or passengers, and for watchman’s telltales, recording not only the time of his. own resting, but that at which he may pass certain points of his beat.”
The description of this apparatus is crude, and the drawings insufficient, and it is doubtful if it possesses any practical utility. Briefly, it consists of three syphon pens which trace lines on' a slip of paper kept in motion by clockwork. One pen marks the time upon the paper by means of a series of points; another pen is connected to a wheel or axle *463 of the vehicle in such a manner as to produce waves or points across the paper at definite intervals, according to the distance traveled; a third pen is intended to mark the ingress or egress of each passenger, by being deflected above or below the line. The third pen, for registering the entrance or exit of passengers, is considered to have the most important bearing on the Ennis device. The force applied in its operation may be either pneumatic or electric. When electricity is used the pen is mounted upon a post which is turned on its pivot by a magnet, and this magnet is intended to be moved to one side or the other by currents of opposite polarity sent through it, and the pen marks in accordance with the manner in which the currents are actuated by the steps of the vehicle. When a person entering an omnibus puts his foot on the lower step an angular mark is made below the line, and when he puts his foot on the upper step an angular mark is made above the line, and this is true when a passenger gets out, except that the marks come in the reverse order with respect to the line. Assuming that this device would work practically under the various conditions which surround passengers getting in and out of an omnibus, which may well be questioned, still, what does it do? It merely records by means of a mark a certain action, just the same as the watchman’s clock records a certain action, and it is in no proper sense the message receiver of the Ennis device. Without further consideration I am satisfied that the White-house & Phillips patent does not anticipate the invention of Ennis.
The question of infringement remains. In defendants’ apparatus there is a magnet in the main circuit whose armature controls the telegraphic receiving device and the time stamp just as in the Ennis patent. The main difference between the two contrivances is that in defendants’ the message receiving instrument and the time stamp are operated by electrical devices instead of mechanical, as in Ennis’,—that is to say, the defendants use relays or subcircuits instead of levers, by which means the apparatus may be operated by a smaller current. The use of a relay or subcircuit is said to be analogous to the introduction of an additional lever or wheel in a machine. It has long be known that you may attach a lever or levers to the armature of an electro-magnet, and each will operate mechanically, because there is the source of power in the armature, or, instead thereof, you can use the armature to throw into or out of action a battery in a subcircuit, and so move the armature of the magnet in such subcircuit, and this will operate the same as the levers. The subcircuits of the defendants’ apparatus are, therefore, the equivalent of the levers of the Ennis patent. Ennis himself recognized this in his patent where, in speaking of an additional bell alarm, he says:
“The tripping of said clock may be effected by direct mechanical action, as pulling on a wire attached to said armature and to said detent; but I prefer to close an additional circuit by the movement of armature, L, or lever, U, and thereby operate an additional electro-magnet and armature, thus tripping said detent.”
The defendants do not employ the Ennis time stamp, but they use, in substance, the time stamp of the Hinchman patent of July 29, 1873, *464 which was old at the date of the Ennis invention. The fact that the Ennis machine is operated with two strips of paper, while the defendants’ machine uses only one, I do "not think of material importance.
The first claim of the Ennis patent is for an apparatus which accomplished a result unknown in the art up to that time, and the defendants’ apparatus accomplishes the same result through the same, or well-known, or equivalent instrumentalities, and, therefore, their machine is within the Ennis invention. Decree for complainants.

 Municipal Signal Co. v. Gamewell Eire Alarm Tel. Co., (No. 2,537,) 52 Fed. Rep. 468, Municipal Signal Co. v. Gamewell Fire Alarm Tel. Co., (No. 2,589,) 52 Fed. Rep. 464, and Gamewell Fire Alarm Tel. Co. v. Municipal Signal Co., (No. 2,543,) 52 Fed. Rep. 471.